**United States District Court**
For the Northern District of California

**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WILLIAM S. OSWALD,

                 Petitioner,

vs.

A.P. KANE, Warden,

                 Respondent.

_____/

No. C 05-0173 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

       Petitioner, a California prisoner incarcerated at the Correctional Training Facility in Soledad ("CTF"), has filed a petition for a writ of habeas corpus challenging the 2003 decision of the Board of Parole Hearings ("Board," formerly the Board of Prison Terms) denying him parole. This matter is now before the court for consideration of the merits of the habeas petition. For the reasons set forth below, the petition is denied.

## BACKGROUND

       The Board summarized the facts of the commitment offense as follows:

> During the early morning hours of August 28[, 1988,] the inmate, using a Uzi submachine gun, shot and killed one woman and seriously wounded another. The crimes occurred sometime after the inmate had concluded . . . a drug purchase with one or both of the victims. Believing that he had been cheated in the transaction, this inmate attempted to convince the women to return his money or otherwise make good on the deal. When one of the women threw a bottle at the side of his truck to frighten him away, Mr. Olsen, assuming that he was being attacked, exited his vehicle, retrieved the Uzi and commenced firing. At trial the inmate claimed that he had ingested a significant quantity of cocaine and alcohol in the hours preceding the crimes and that the drugs had affected his perception of events. On this, and related evidence, he was convicted, the jury having obviously rejected his testimony that he held an honest but unreasonable belief in the need to defend himself.

Answer Ex. C (May 2, 2003, hearing transcript) at 9-10.

**United States District Court**
For the Northern District of California

1    On May 17, 1989, a jury in Los Angeles County Superior Court convicted Petitioner

2    of second degree murder and attempted second degree murder, and found true the

3    allegation of use of a firearm.  Answer Ex. A (Abstract of Judgment and Judgment).

4    Petitioner was sentenced to seventeen years to life.  Petitioner was received into custody

5    by the California Department of Corrections on June 20, 1989.

6    Petitioner did not attend his initial parole hearing in January 1999, at which he was

7    denied parole for four years.  On May 2, 2003, Petitioner appeared before the Board for a

8    subsequent parole consideration hearing and was represented by counsel.  At the time of

9    the 2003 hearing, petitioner was forty-nine years old and had been in state custody for

10   about fourteen years.  The Board considered petitioner's commitment offense, prior

11   criminality, social history, and behavior during imprisonment.  The Board reviewed

12   petitioner's central file and Board packet, any new reports, his psychiatric evaluation, and

13   his parole plans.  Answer Ex. C at 3-4.  During the hearing, petitioner presented about

14   eighteen letters of support from family members, friends and community members.  *Id.* at

15   33-38.  Also present at the hearing was a deputy district attorney from Los Angeles County

16   who stated on the record that the District Attorney opposed a finding of suitability.  *Id.* at 48-

17   49.

18   The Board concluded that petitioner was not suitable for parole and would pose an

19   unreasonable risk of danger to society if released from prison.  *Id.* at 56.  The Board first

20   considered the commitment offense: the Board found that it was carried out in a cruel

21   manner with a disregard for human suffering, that it was carried out with a disregard for the

22   safety or well-being of others, that he went to that location to purchase drugs and fired his

23   gun rather than drive away when he felt threatened, that he fired seventeen shots, that

24   multiple victims were attacked, that there were a number of people present when he fired,

25   and that one person was killed and another wounded.  *Id.* at 56-57.  The Board further

26   considered petitioner's arrest record related to his substance abuse, including time spent

27   on probation, time in county jail and a diversion program, and noted that these programs

28   did not correct his criminality.  *Id.* at 57.

1    With regard to institutional behavior, the Board considered that petitioner improved

2  his education and participated in self-help programs, including Alcoholics Anonymous,

3  Narcotics Anonymous and the Straight from the Heart program.  *Id.* at 58.  The Board

4  noted, however, that petitioner received two "115" serious rules violation reports, including

5  one since his last parole hearing, and three "128" counseling chronos since his

6  incarceration.  *Ibid.*  The Board reviewed petitioner's most recent psychological evaluation,

7  dated October 1998, and noted that it was positive but pre-dated his more recent "115"

8  violation.  *Ibid.*

9    The Board ordered another psychological evaluation for petitioner's next parole

10  hearing and denied parole for four years.  *Ibid.*  The Board based this finding on petitioner's

11  commitment offense, criminal record, prison disciplinary record, and the District Attorney's

12  opposition to parole suitability.  *Id.* at 58-59.  The Board encouraged petitioner to continue

13  participating in self-help and outreach programs and to avoid disciplinary reports, and noted

14  that the seriousness of the offense far outweighed his accomplishments in prison.  *Id.* at 59.

15    Following the Board's decision denying parole, petitioner filed an administrative

16  appeal which was denied on October 15, 2003.  Answer Ex. F.  Petitioner filed a petition for

17  a writ of habeas corpus in Los Angeles County Superior Court, which denied the petition on

18  March 3, 2004, on the grounds that he failed to show a prima facie case for relief, and that

19  Los Angeles County was not the appropriate jurisdiction for seeking relief from the Board's

20  actions.  Answer Ex. E.  The Court of Appeal and the California Supreme Court summarily

21  denied his subsequent petitions for relief.  Answer Exs. F, G.

22    Petitioner timely filed this federal petition for a writ of habeas corpus on January 12,

23  2005.  Respondent answered and petitioner filed a traverse.  The matter is submitted for a

24  decision on the merits.

25  **STANDARD OF REVIEW**

26    A district court may not grant a petition challenging a state conviction or sentence on

27  the basis of a claim that was reviewed on the merits in state court unless the state court's

28  adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1   unreasonable application of, clearly established Federal law, as determined by the

2   Supreme Court of the United States; or (2) resulted in a decision that was based on an

3   unreasonable determination of the facts in light of the evidence presented in the State court

4   proceeding."  28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to

5   mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000),

6   while the second prong applies to decisions based on factual determinations, *Miller-El v.*

7   *Cockrell*, 537 U.S. 322, 340 (2003).

8        A state court decision is "contrary to" Supreme Court authority, that is, falls under the

9   first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that

10  reached by [the Supreme] Court on a question of law or if the state court decides a case

11  differently than [the Supreme] Court has on a set of materially indistinguishable facts."

12  *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application

13  of Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly

14  identifies the governing legal principle from the Supreme Court's decisions but

15  "unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  The

16  federal court on habeas review may not issue the writ "simply because that court concludes

17  in its independent judgment that the relevant state-court decision applied clearly

18  established federal law erroneously or incorrectly."  *Id.* at 411.  Rather, the application must

19  be "objectively unreasonable" to support granting the writ.  *Id.* at 409.

20       Under Section 2254(d)(2), a state court decision "based on a factual determination

21  will not be overturned on factual grounds unless objectively unreasonable in light of the

22  evidence presented in the state-court proceeding."  *Miller-El*,  537 U.S. at 340.

23       When there is no reasoned opinion from the highest state court to consider the

24  petitioner's claims, the court looks to the last reasoned opinion of a state court.  *See Ylst v.*

25  *Nunnemaker*, 501 U.S. 797, 801-806 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079

26  n. 2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).  Where the state court gives no

27  reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned

28  lower court decision on the claim, a federal court conducts "an independent review of the

United States District Court

For the Northern District of California

1    record" to determine whether the state court's decision was an unreasonable application of

2    clearly established federal law.  *See Plascencia v. Alameida*, 467 F.3d 1190, 1198 (9th Cir.

3    2006); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

4    **DISCUSSION**

5         Petitioner alleges that the Board's 2003 decision denying him parole violated his

6    right to due process, and that the Board demonstrates systematic bias against granting

7    parole.  Petitioner also raises a new claim challenging the Board's decision as violating his

8    right to jury trial.  None of these claims merits habeas relief.

9    **I.**      **Due Process in Parole Suitability Determinations**

10        **A.**      **Some Evidence Standard of Judicial Review**

11         The Ninth Circuit has determined that a California prisoner with a sentence of a term

12    of years to life with the possibility of parole has a protected liberty interest in release on

13    parole and therefore a right to due process in the parole suitability proceedings.  *See*

14    *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) (citing *Board of Pardons v. Allen*,

15    482 U.S. 369 (1987); *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S.

16    1 (1979)).  *See also Irons v. Carey*, 505 F.3d 846, 851 (9th Cir.), *reh'g and reh'g en banc*

17    *denied*, 506 F.3d 951 (9th Cir. 2007); *Sass v. California Board of Prison Terms*, 461 F.3d

18    1123, 1127-28 (9th Cir. 2006), *reh'g and reh'g en banc denied*, No. 05-16455 (9th Cir. Feb.

19    13, 2007); *Biggs v. Terhune*, 334 F.3d 910, 915-16 (9th Cir. 2003) (finding initial refusal to

20    set parole date for prisoner with fifteen-to-life sentence implicated prisoner's liberty

21    interest).

22        A parole board's decision satisfies the requirements of due process if "some

23    evidence" supports the decision.  *Sass*, 461 F.3d at 1128-29 (adopting some evidence

24    standard for disciplinary hearings outlined in *Superintendent v. Hill*, 472 U.S. 445, 454-55

25    (1985)).  *See also Irons*, 505 F.3d at 851.  "To determine whether the some evidence

26    standard is met 'does not require examination of the entire record, independent

27    assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the

28    relevant question is whether there is any evidence in the record that could support the

United States District Court

For the Northern District of California

1  conclusion reached'" by the parole board. *Sass*, 461 F.3d at 1128 (quoting *Hill*, 472 U.S. at

2  455-56). The "some evidence standard is minimal, and assures that 'the record is not so

3  devoid of evidence that the findings of the . . . board were without support or otherwise

4  arbitrary.'" *Id.* at 1129 (quoting *Hill*, 472 U.S. at 457).

5        Respondent contends that an inmate is entitled to only minimal protections to satisfy

6  due process in a parole proceeding. Citing *Greenholtz*, Respondent contends that due

7  process in state parole procedures is satisfied merely if they afford the inmate an

8  opportunity to be heard and a decision informing him why he did not qualify for parole

9  release. The Ninth Circuit, however, has held that requiring less than the some evidence

10  standard "would violate clearly established federal law because it would mean that a state

11  could interfere with a liberty interest - that in parole - without support or in an otherwise

12  arbitrary manner." *Sass*, 461 F.3d at 1129. Thus, the some evidence standard of

13  *Superintendent v. Hill* is clearly established law in the context of parole denial for purposes

14  of federal habeas review. *Ibid.*

15        **B.**    **Some Evidence in the Record to Support Board Decision**

16        In Claim One, petitioner challenges the Board's decision as unsupported by some

17  evidence having an indicia of reliability. Citing *Biggs*, petitioner contends that he has been

18  free of discipline and violent behavior during his incarceration, and suggests that the Board

19  cannot rely on unchanging factors such as the gravity of the offense and prior criminal

20  history to deny parole where he has demonstrated good behavior and engaged in

21  rehabilitative programs. The court construes this claim to raise two challenges: first, that

22  the Board's decision was not supported by some evidence, and second, that the Board's

23  reliance solely on the circumstances of the commitment offense as grounds for denial

24  violated due process under *Biggs*. In the absence of a reasoned state court decision on

25  the merits of this claim, the court has conducted an independent review of the record and

26  determines that some evidence supports the Board's findings and that there is no basis for

27  relief on the purported *Biggs* claim.

28

United States District Court

For the Northern District of California

### 1.     Some Evidence

First, petitioner contends that the Board's decision was not supported by some evidence having an indicia of reliability.  In assessing whether the Board's denial of parole was supported by some evidence, the court's "analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." *Irons*, 505 F.3d at 851 (citing *Biggs*, 334 F.3d at 915).  "Accordingly, here we must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by 'some evidence' in [petitioner's] case constituted an unreasonable application of the 'some evidence' principle articulated in *Hill*, 472 U.S. at 454, 105 S.Ct. 2768." *Ibid.*  Under California law, "[t]he Board must determine whether a prisoner is presently too dangerous to be deemed suitable for parole based on the 'circumstances tending to show unsuitability' and the 'circumstances tending to show suitability' set forth in Cal. Code. Regs., tit.15 § 2402(c)-(d)." *Ibid.*

Title fifteen, section 2402, of the California Code of Regulations sets forth the criteria for determining whether an inmate is suitable for release on parole.  The circumstances tending to show that a prisoner is unsuitable include the following: (1) the commitment offense, where the offense was committed in "an especially heinous, atrocious or cruel manner;" (2) the prisoner's previous record of violence; (3) "a history of unstable or tumultuous relationships with others;" (4) commission of "sadistic sexual offenses;" (5) "a lengthy history of severe mental problems related to the offense;" and (6) "serious misconduct in prison or jail."  Cal. Code. Regs., tit. 15 § 2402(c).  The circumstances tending to show that a prisoner is suitable for parole include the following: (1) the prisoner has no juvenile record; (2) the prisoner has experienced reasonably stable relationships with others; (3) the prisoner has shown remorse; . . . (6) the prisoner lacks any significant history of violent crime; (7) the prisoner's present age reduces the risk of recidivism; (8) the prisoner "has made realistic plans for release or has developed marketable skills that can

United States District Court

For the Northern District of California

1  be put to use upon release;" and (9) institutional activities "indicate an enhanced ability to

2  function within the law upon release."  Cal. Code. Regs., tit. 15 § 2402(d).

3        With respect to the commitment offense, the Board determined that petitioner

4  committed the crime "in a cruel manner with a disregard for human suffering," and "with a

5  disregard for the safety or the wellbeing of others."  Answer Ex. C at 56.  To support this

6  finding, the Board considered that multiple victims were attacked, Cal. Code Regs. tit. 15

7  § 2402(c)(1)(A): one victim was killed, one was wounded and a number of others were

8  exposed to great harm when petitioner fired his semiautomatic gun in the presence of a

9  group of people.

10        The Board also considered petitioner's prior criminal record.  Answer Ex. C at 56.

11  Petitioner admits his prior convictions and his history of substance abuse, but contends that

12  his prior crimes were not assaultive or violent to show unsuitability under the regulations,

13  Cal. Code Regs. tit. 15 § 2402(c)(2).  The regulations provide, however, that the Board

14  consider not only violent criminal history, but all relevant, reliable information, such as "past

15  criminal history, including involvement in other criminal misconduct which is reliably

16  documented."  *Id.* § 2402(b).

17        With respect to petitioner's disciplinary history during his incarceration, the Board

18  considered that petitioner had received two "115" serious rules violations reports, including

19  one since his last parole hearing in 1999.  Answer Ex. C at 58.  The more recent report,

20  dated October 21, 2000, was issued for conduct likely to lead to violence.  Answer Ex. D

21  (Jan. 2003 Life Prisoner Evaluation Report) at 2.  The Board also considered that Petitioner

22  received three "128A" counseling chronos.  Answer Ex. C at 58.

23        The Board considered petitioner's most recent psychological evaluation, dated

24  October 15, 1998, which estimated that his violence potential within a controlled setting

25  would be below average, and if released would be "no more than average relative to the

26  average citizen in the community."  Answer Ex. C at 32.  The Board noted, however, that

27  this favorable evaluation was prepared before petitioner's more recent serious rule

28  violation, and ordered a new psychological evaluation.  *Id.* at 58.

United States District Court

For the Northern District of California

1    The record reflects that the Board's parole suitability determination was supported

2  by some evidence.  The state courts' denial of habeas relief on this claim was neither

3  contrary to, nor an unreasonable application of, clearly established federal law.

4         **2.    *Biggs* Claim**

5    Second, petitioner contends that the Board relied solely on his prior criminal history

6  and commitment offense to deny parole, that such conduct before incarceration is not

7  reliable evidence to support unsuitability because he has not "recently committed a criminal

8  act," that he has not committed any violent acts in prison, and that "the Board's finding that

9  the gravity of his offense and his previous criminal history from over fifteen (15) years past

10  outweigh all of the positive factors of his imprisonment [demonstrating] his rehabilitation is

11  contrary to the evidence which was before the Board."  Petition at 10.

12    Petitioner relies on *Biggs* for dicta suggesting that over time, continuing to deny

13  parole to an inmate who demonstrates exemplary behavior and evidence of rehabilitation

14  could violate due process if the Board were to continue to rely solely on the unchanging

15  factors of the commitment offense and conduct prior to imprisonment.  *See Biggs*, 334 F.3d

16  at 916-17.  *Biggs* upheld the initial denial of a parole release date based solely on the

17  nature of the crime and the prisoner's conduct before incarceration, but cautioned that the

18  value of the criminal offense fades over time as a predictor of parole suitability: "The Parole

19  Board's decision is one of 'equity' and requires a careful balancing and assessment of the

20  factors considered. . . .  A continued reliance in the future on an unchanging factor, the

21  circumstance of the offense and conduct prior to imprisonment, runs contrary to the

22  rehabilitative goals espoused by the prison system and could result in a due process

23  violation."  *Biggs*, 334 F.3d at 916-17.

24    Petitioner overstates *Biggs* as holding that an exemplary inmate cannot be denied

25  parole solely on the basis of the commitment offense and conduct prior to imprisonment,

26  but *Biggs* did not so hold.  As the Ninth Circuit noted in *Sass*, "*Biggs* affirmed a denial of

27  parole after holding that the circumstances of the offense and conduct prior to

28  imprisonment constituted some evidence to support the Parole Board's decision."  *Sass*,

9

**United States District Court**
For the Northern District of California

461 F.3d at 1126 (citing *Biggs*, 334 F.3d at 917).  *See Biggs*, 334 F.3d at 916 ("As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law.").

The Ninth Circuit has expressed competing views on *Biggs* in subsequent panel decisions.  In *Sass*, the Ninth Circuit held that evidence of Sass's prior offenses and the gravity of his commitment offenses constituted some evidence to support the Board's decision.  461 F.3d at 1129.  Acknowledging the cautionary statements in *Biggs* concerning the potential for a due process violation by continued reliance in the future on immutable factors, *Sass* criticized that part of the opinion as improper speculation about how future parole hearings could proceed.  *Ibid.*

In *Irons*, however, the Ninth Circuit echoed the concern raised in *Biggs* and expressed its "hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes." *Irons*, 505 F.3d at 854 (citing *Biggs*, 334 F.3d at 917).  Although the court determined that the Board's unsuitability finding was supported by "some evidence" that Irons's crime was especially cruel and callous, the *Irons* panel pointed out that in the cases holding that sole reliance on the commitment offense did not violate due process, namely, *Irons*, *Sass* and *Biggs*, "the decision was made before the inmate had served the minimum number of years required by his sentence." *Irons*, 505 F.3d at 852-54.  *Irons* reasoned that due process was not violated when these prisoners were deemed unsuitable for parole "prior to the expiration of their minimum terms," even if they had demonstrated substantial evidence of rehabilitation.  *Id.* at 854.

Rehearing en banc was denied in both *Sass*, No. 05-16455 (9th Cir. Feb. 13, 2007), and *Irons*, 506 F.3d 951 (9th Cir. Nov. 6, 2007).  However, the Ninth Circuit has recently granted rehearing en banc in *Hayward v. Marshall*, 512 F.3d 536 (9th Cir. 2008), *reh'g en banc granted*, __ F.3d ____, No. 06-55392 (9th Cir. May 16, 2008).  The *Hayward* panel

United States District Court
For the Northern District of California

1   concluded that the gravity of the commitment offense had no predictive value regarding

2   Hayward's suitability for parole, and held that the Governor's reversal of parole was not

3   supported by some evidence and resulted in a due process violation.  512 F.3d at 546-47.

4   The Ninth Circuit since has ordered rehearing en banc, with oral argument set for June 24,

5   2008.

6        Unless or until the en banc court overrules the holdings of the earlier panel decisions

7   in *Biggs*, *Sass* and *Irons*, these cases hold that California's parole scheme creates a

8   federally protected liberty interest in parole and therefore a right to due process which is

9   satisfied if some evidence supports the Board's parole suitability decision.  *Sass*, 461 F.3d

10  at 1128-29.  These cases also hold that the Board may rely on immutable events, such as

11  the nature of the conviction offense and pre-conviction criminality, to find that the prisoner

12  is not currently suitable for parole, *Sass*, 461 F.3d at 1129.  *Biggs* and *Irons* further

13  suggest, however, that over time, the commitment offense and pre-conviction behavior

14  become less reliable predictors of danger to society such that repeated denial of parole

15  based solely on immutable events, regardless of the extent of rehabilitation during

16  incarceration, could violate due process at some point after the prisoner serves the

17  minimum term on his sentence.  *See Irons*, 505 F.3d at 853-54.

18       Respondent contends that the court may not overturn the state court decision on the

19  purported *Biggs* claim because *Biggs* is not clearly established federal law as determined

20  by the Supreme Court.  Assuming, without deciding, that under some circumstances,

21  habeas relief may be granted under *Biggs* on a claim that parole denial based on continued

22  reliance on the commitment offense and other unchanging factors does not satisfy the

23  some evidence standard, the court finds that petitioner fails to establish the predicate for a

24  *Biggs* claim.  First, the Board did not rely solely on unchanging factors such as the

25  commitment offense, but also considered petitioner's institutional behavior, particularly the

26  recent serious rules violation report.  Second, at the time of the 2003 Board decision,

27  petitioner had been in custody for fourteen years and had not served the minimum term of

28  his seventeen years-to-life sentence.  *See Irons*, 505 F.3d at 854.  Thus, the state courts'

1    denial of relief was neither contrary to, nor an unreasonable application of, clearly

2    established federal law.

3    **II.    Systematic Bias**

4    In Claim Two, petitioner alleges that "[t]he Board demonstrates systematic bias in

5    their decision making by denying grants of parole to 98.5% of appearing inmates while

6    [simultaneously] denying 100% of all administrative appeals."  Petition at 5.  Petitioner

7    contends that the Board conducted a "pro forma" parole hearing and denied him due

8    process.  *Id.* at 8.  Petitioner also contends that an evidentiary hearing is necessary to

9    determine mathematically whether the state demonstrates an unconstitutional bias against

10   granting parole.  Traverse ¶ 16.  This claim does not merit relief.

11   The court's independent review of the record reveals that the Board provided

12   petitioner an opportunity to testify at the hearing and present documentary evidence of

13   positive behavior during incarceration.  The transcript reflects that the Board reviewed the

14   evidence extensively and discussed it with petitioner and his attorney.  Answer Ex. C at 7-

15   54.  In announcing its decision, the Board explained the facts it relied upon in finding him

16   not suitable for parole.  *Id.* at 56-59.  These factors tend to negate the accusation of bias by

17   demonstrating that the Board considered individualized facts and evidence in petitioner's

18   case, and petitioner has not shown otherwise.  Nor has petitioner made the showing

19   necessary for an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2).  The state courts'

20   rejection of this claim was neither contrary to, nor an unreasonable application of, clearly

21   established federal law.

22   **III.    Right to Jury Trial**

23   In his traverse, petitioner raises a new claim that by denying parole, the Board made

24   a post-trial factual finding that determines the length of his prison term in violation of his

25   right to trial by jury under *Blakely v. Washington*, 542 U.S. 296 (2005).  This claim was not

26   presented in the petition, and petitioner may not raise new claims for relief in the traverse.

27   *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994), *cert. denied*, 514 U.S.

28

United States District Court

For the Northern District of California

1   1026 (1995).  Nor has petitioner demonstrated that he has exhausted the remedies

2   available in state court.  *See* 28 U.S.C. § 2254(b), (c).

3       Although petitioner did not raise properly the *Blakely* claim or exhaust his remedies,

4   the court denies relief on the merits of this claim.  28 U.S.C. § 2254(b)(2).  The statutory

5   maximum for petitioner's crime, murder in the second degree, is life imprisonment.  Cal.

6   Penal Code § 190(a).  No additional facts must be found beyond those which were found

7   by the jury at petitioner's trial in order for him to be imprisoned for life.  Petitioner has no

8   right to a jury trial in connection with parole determinations before the expiration of his life

9   sentence.  *See Blakely*, 542 U.S. at 308-09 ("indeterminate schemes involve judicial

10  factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems

11  important to the exercise of his sentencing discretion").  This claim is therefore denied.

**CONCLUSION**

13      Based on the foregoing, the petition for a writ of habeas corpus is DENIED.  The

14  clerk of the court shall close the file.

15      **IT IS SO ORDERED.**

16

17  Dated: June 5, 2008                                     _____

18                                                          PHYLLIS J. HAMILTON
                                                            United States District Judge

19

20

21

22

23

24

25

26

27  G:\PRO-SE\PJH\HC.05\OSWALD173.DENY.ord.wpd

28

*United States District Court*
For the Northern District of California